We'll now continue with the rest of the calendar. We'll hear Riles v. Buchanan. Thank you, Your Honor. Benjamin Jensen of Robinson & Cole is counsel for the plaintiff Daniel Riles. With me at counsel table is Attorney Kelly Fry Barnett. Your Honors, there are two principal issues before the court today. The first, whether or not Mr. Riles properly exhausted administrative remedies that were available to him before suing in district court on his excessive force claim. The second issue is whether disputed issues of material fact exist as to whether the defendant's medical professionals demonstrated deliberate indifference to plaintiff's serious medical needs. The district court erred in finding in favor of defendants on both of these issues, and unless reversed, the impact of that error is clear. No review, either administrative or judicial, will ever take place with respect to a videotaped incident in which the plaintiff was thrown headfirst into a concrete wall while handcuffed with his hands behind his back, resulting in serious injuries and permanent disability. And second, the defendant's medical professionals will never have to answer for their conscious decisions to leave those injuries untreated for several months and to refuse to allow Mr. Riles to see a specialist. I think we saw the video, but the question before us is whether your client exhausted his remedies. Correct, Your Honor. So why don't you address that? Certainly. This is a different case than a lot of the other ones that are cited by the defendants where it's been found that the inmate failed to exhaust administrative remedies, and we pointed out several of those cases at page 23 of our brief. There are disputes here about whether or not the plaintiff's efforts to exhaust technically complied with every step of the administrative directive. No, they didn't. I respectfully disagree, Your Honor, that it's not clear. He didn't do the request until later. There's a request for an informal adjudication or formal resolution, and there's no evidence that he put in that request in a timely way within the first 30 days, right? I disagree with that, Your Honor. What is the evidence on that? There is evidence of a videotaped verbal informal request that was made by Mr. Riles. Does that have to be in writing? Under 9.6, it says that a verbal informal request is permitted. The caveat to that is that— If that fails, don't you then have to file a written inmate request form? That's correct. Did he file such a form? Not until after his Level 1, Level 2, and Level 3 grievances. A written request form actually triggers further procedures. It's either responded to or it's not responded to, but there's got to be evidence of it. And then if it's responded to, there could be a work out or not. And if it's not responded to, then he has a certain amount of time within which to file his grievance. I would disagree that it's as clear as that. Because of the option that's made available to inmates to make a verbal informal request, and the language is not if it fails. The language is if it's not—I believe the specific language is that if the verbal request does not satisfactorily resolve the issue. So what my client believed was that by making the verbal request, by being assured that there was an investigation into Defendant Blue's conduct that would be forthcoming, and then to immediately thereafter find out that the investigation was not into Defendant Blue but into his own actions, we're in a situation where there has been relief that has been promised that was not delivered. And under the Abney decision— He submitted a Level 1 grievance. A Level 1 grievance then follows. He submitted a Level 1 grievance without a written inmate request form, correct? That is correct. And when he submitted his Level 1 grievance, did he explain why he didn't submit the inmate request form? He did not. And isn't that required by the rules? Under the rules, those are the two requirements. You either have to attach the written request form or explain why it's not been attached. He did neither. That's correct. He didn't follow the procedures, correct? To the extent that the procedures can be interpreted as the defendants have advocated that the verbal request needs to be— that the verbal request has no effect, basically, and that it has to be followed up by a written request. Let me take another tag. Please. I'm reading your blue brief, page 10. It says, plaintiff failed to exhaust his administrative remedies in the manner prescribed by the DOC. Why isn't this whole argument about exhaustion abandoned, actually waived? You can see. When I refer to the manner prescribed by the DOC, I'm referring to what the defendants have characterized as their interpretation of that specific requirement. We've mandated throughout the brief that there was compliance with the verbal request form. And then further, that once—the DOC has an option where they can return a grievance form without disposition and allow the plaintiff to refile. So it's not a jurisdictional dispositive requirement that that written informal request be submitted. There is actually an opportunity to resubmit, which my client, in fact, did, which only to then be rejected. He was out of time by then. Correct. But under the language of that directive, there is no reference to the subsequent refiling to correct what is essentially a technical error in failing to attach the form. There's no time restriction on that subsequent filing. That's not at all clear from the directive. There's no language whatsoever that says that the resubmission needs to be made within a certain time frame. And respectfully, my client was kind of buzzsawed here because you have this one—on the one hand, he makes an informal request. He follows it up by a written Level 1 grievance. He receives no response. He follows it up with a Level 2 grievance. He receives no response. He follows it up with a Level 3 grievance, at which time he has then said, you can't just start with Level 3. But they're denying that he even submitted the Level 1 and the Level 2 grievance. They're denying that after relying on the Level 1 and Level 2 grievance at summary judgment. So after the fact, they're denying that they received it. And even if they're denying that they received it, even if they should be allowed to make that argument, that's an issue of fact. That's a disputed issue of fact whether or not the DOC received those forms. Respectfully, the evidence shows that those were submitted because in each one of his grievances, he's referring to the prior ones that he submitted and asking, how come I haven't received a response? How come no one is addressing this? And specifically saying that he believes it's due to administrative reprisal because he has been speaking to the commissioner and to the police about this incident. You are not making or you are no longer making a hemp pill special circumstances argument. Is that correct? Your Honor, the law has been clarified by the Ross v. Blake case. And the special circumstances using that specific term is no longer applicable. The analysis has been refocused, I guess is the right term. And now the question is whether or not the remedy was available to him. I submit that most of the argument under hemp pill still applies to the question in these circumstances of whether or not a remedy was actually available to my client. And I think the evidence shows that in these circumstances where I count seven different requests for addressing this administrative complaint that were either ignored by DOC or were denied on grounds that had nothing to do with what had actually occurred. Under that circumstance, I think the analysis in Ross v. Blake, which this court then reiterated in the Williams case just the last month, demonstrates that DOC had the opportunity to address this issue, the point of exhaustion. How do we write an opinion in your favor that says, that comes out the way you wish, but at the same time upholds the principles that exhaustion is to be strictly construed against the inmate and the procedures must be followed without opening a door to all sorts of, hey, my case is different kind of situations? I understand that concern, Your Honor, and I think that the circumstances here are different because this is not a— I know you are, but everybody else is going to say the same thing. I mean, these rules are pretty clear and pretty specific. I would disagree that they're very clear in these circumstances where there is a situation where the only issue with the submission is an apparent failure to include a written informal request, and when the guidelines specifically say that that can be corrected. It's not an apparent failure. It's a failure. He did not attach the CN-9601. In the initial level one grievance submission. He later did that. He later did that. But by that time he was out of time. Well, and that's what— The rules are tough. The rules are very tough. There's no doubt about it. I definitely understand, Your Honor, but the rules do not cover the situation where a resubmission is taking place as a result of a technical noncompliance with the initial matter. That is not a jurisdictional requirement. It is clearly said that the inmate may resubmit to correct that deficiency.  So under that scenario, these are different factual circumstances that would not be presented in every other case. There's repeated efforts. Thank you. You've saved a couple of minutes for rebuttal. Thank you. Why don't you address this very last point, which is that the rules do permit a resubmission and do not specify the time within which that resubmission has to be made? Certainly, Your Honor. The rules do not permit an inmate to simply refile a written informal resolution request. The provisions in the procedures, there's two provisions. One that says that DOC has— a Level I grievance that has not been properly preceded by a written informal resolution request. What is that? It's JA 620 and 621 Sections E and F. Section E allows—provides that a grievance may be returned, and it uses the word may. It doesn't say shall. It says DOC may return a grievance without disposition for failure to comply with the written informal resolution requirements. And Section F, the very next section, which Plaintiff omits in his brief, specifically says any grievance which does not meet the criteria specified in Section 6A, which is the written informal resolution requirement, of this directive may be rejected outright. It does seem a little harsh, a little unforgiving. I don't think it's harsh, Your Honor, because the written informal resolution requirement is very clearly spelled out in the procedures. It's not ambiguous at all about his obligation to do that. And even if it is harsh, Your Honor, that's— If it is true, assuming he submitted Level I and Level II grievances, he made six or seven efforts to raise the issue, and yet the argument is he failed to exhaust? I think you have to keep in mind, Your Honor, that he failed to comply with the very first step, and that's fatal. Even if you were to assume that he did then just skip right to the Level I and he did submit that and he didn't get a response, and then he submitted his Level II and didn't get a response, the procedures specifically provide an avenue for the inmate to address that. The DOC has contemplated there may be mistakes made, something might happen where they don't get a timely response, and the procedures provide that the inmate can just appeal to the next level, and that's what he did. He knew that he could appeal, and that's what he did. He didn't do it right at any step of the process, but there's a procedure in place for that, and he has to properly comply with that procedure all the way through. And if he does that, if he had done the written informal, done the Level I, done the Level II, then he could say, I've properly exhausted. He didn't do any of that. In the light of Ross, we don't have any discretion. Absolutely. It may be harsh, but Congress has made that decision, Your Honors, and the Supreme Court has made clear repeatedly that— What about the availability argument? I mean, they do seem a little dense, these rules, and there are pretty tight timeframes. So, Your Honor, Ross identified three ways that a procedure can be deemed unavailable, and Ross came out after, so we haven't really briefed it in that way. So I'll take them each. The first I think what you're referring to is kind of the opaqueness argument, which is where the procedures are so unclear that no prisoner can comply with them. And in this Court's recent Priatno decision, I think that's where the decision went in that case. But the Supreme Court made very clear in Ross that that's a very, very high standard. It's not just reasonable minds can disagree, misinterpretations, ambiguities. They have to be so unclear that no prisoner can possibly comply with them. And, again, the written informal resolution requirement, which is what he failed to do, is crystal clear. There's no question he had to do that, and that he could not proceed to level one without doing it first. And Judge Schotteny below and numerous district courts in Connecticut have found these procedures to be clear. Judge Schotteny used the words quite clear. So it doesn't even come close to meeting the opaqueness standard. The second exception that Ross identified is the institutional dead end, where the procedures maybe exist on paper, but DOC doesn't actually have authority to implement them, and that's kind of what was at issue in Ross. That's not the case here. Administrative Directive 9.6 is the only procedure that exists for this kind of remedy or grievance. DOC officials clearly have authority to rule on these grievances if they're properly filed, and there's no evidence to suggest that DOC ever, much less consistently, disclaims that. So, really, the third prong, I think, is where the plaintiff's kind of hanging its hat, the intentional bad acts by DOC that would maybe interfere. And he really identifies three ways that he thinks that happened, and there's just no support for it in the record. The first argument he makes is that he made this verbal resolution request and DOC said they'd look into it and then didn't. I think, frankly, that borders on a frivolous argument, Your Honors. He concedes expressly in his brief and argument today that he learned immediately after that that they weren't going to be investigating this. And there was an alleged threat. That's his second argument, Your Honor. He's alleging that there's a threat, but first of all, that's a waived argument. He never raised that below. District Court did not address it. It's not in any of the briefs below. There's no evidence of it, not from his own affidavit, not in his depositions. All that is is a post hoc statement of counsel in an appellate brief, and that's not enough for summary judgment, Your Honor. And I'd also point out that even if there were evidence of this and it hadn't been waived of threats, they didn't dissuade him from doing anything because he clearly continued to go. Continued with the process. Right. He didn't do it correctly, but he went through the process. And so it didn't make the procedures unavailable because he still implemented them. What are we to make of the fact that in one of the forms at JA 179, the, I guess, DOC says you have exhausted the department's administrative remedies? Your Honor, that was in regard to his attempt to restart the process long after the fact. And on Level 2, he submitted, he claims he submitted another written informal and then another Level 1. Those both got, that got denied. He appealed to Level 2. And DOC, this was after all, right, this was, so none of this really matters because this is four months later and it's, but DOC denied that Level 2 grievance because the Level 1 was untimely and improper. So that was the whole reason that DOC gave for rejecting that. And then they checked the box because Level 2 is the last level that you can appeal to. You cannot go to Level. This is a mistake? No, Your Honor. Just with the second. No, it was entirely appropriate to check that box. He's saying that you have gone, you've gone as high as you can go and we're going to check this box. You cannot go to Level 3. And if you read the box, it says, it says you've exhausted your remedies and you cannot appeal further. That's why they're checking the box to say he cannot go to Level 3. Wouldn't someone reasonably misunderstand that as saying, okay, I've done what I need to do. I can sue the federal court? I think the only understanding that you could possibly have is that you can't go to Level 3 and that he couldn't go to Level 3. That's the only possible understanding of that. Your Honor, in the Level 2 grievance denial, they're denying it for the very reason that it's untimely and improper. So you have to properly exhaust. Why do you have the language in there? Because he's exhausted his remedies and he can't go to Level 3. That's why they're checking the box to say you cannot go further. This is the last step. You've appealed all the way as far as you can go. We're quarreling over the term, what does exhaustion mean in this context? Exhaustion for the PLRA purpose. It's not a total exhaustion of remedies. It's not a concession. You're saying it's not a concession by the state that the petitioner wins. No, no, no, no, absolutely not, Your Honor. That's not a concession of that. They're telling the inmate that he's gone through the procedures that DOC has in place and he cannot go to Level 3. He can't go further. But the PLRA requires proper exhaustion. So it's not just you exhaust your remedies improperly and then you can go to court. Do you understand how that might mislead inmates into thinking that they've done everything that they need to do to get into federal court by way of exhausting their administrative remedies? If I see a checkbox that says you've exhausted your remedies. It doesn't say. It doesn't use the word proper, Your Honor. It doesn't say, in fact, again, in the Level 2 grievance that they checked that box, they've said your grievance was improper because it was untimely. It doesn't say proper or improper. It does. Your Honor, the very reason they give for rejecting the Level 2 grievance is that the Level 1 was untimely. This statement wasn't made at a time when he could have timely done anything. Correct, Your Honor. So he couldn't be misled into making a mistake. He'd already made his mistake. Correct, Your Honor. It could only come in as some kind of a waiver by the government or a forfeiture of the argument of some kind. Not that it misled him because it wouldn't have any consequences in terms of misleading him. That's absolutely true, Your Honor. I don't think, again, the errors that he committed happened long before this. No, I understand that. I'm not suggesting that through my questions that he, in fact, exhausted his administrative remedies. I'm just concerned that if you have a form with inmates who are not lawyers that says you have exhausted your administrative remedies, that is going to trigger more litigation in federal court because they'll say, oh, I've done exactly what I need to do. I can go to federal court. And, Your Honor— So why is that language there, that specific language? To tell the inmate that there's another—so that was at Level 2. There's another step in the grievance process, which is at Level 3, that exists for a narrow group of grievances that this was not one of them, and that's spelled out in the procedures also. And so the reason that they're checking that box is to tell the inmate this is the last step. You cannot go to Level 3. This is the last step in the procedures for you. Now, if an inmate had done everything properly, he could look at that and say, yes, I've exhausted my remedies. DOC has told me that. I can go to court. Sure, that's absolutely true, as long as everything he did was proper before that. But if he's been violating the procedures at every single step of the process up until they check this box, which is the case here, and then they check the box and say you've exhausted—again, they don't say properly exhausted. You might want to suggest to the Department of Corrections that they revise that language so that it's a little bit clearer. I will do that, Your Honor. All right, thank you. Thank you, Your Honor. We'll hear the rebuttal. Your Honor, addressing the last issue that was just discussed, why is that language there, it's not correct to say that it's simply there to explain to inmates that Level 3 appeals are not going to be heard. It's also in the Level 1 form. So when an inmate submits a Level 1 form that it's denied, that box, which is a J169, the appendix also has you have exhausted your administrative remedies. It was not checked in this instance, but that same language is there. And this fits into the overall picture of a confusing scheme where DOC did nothing in order to assist or to prevent these misunderstandings. What do they have to do to assist, have to do? I mean, the cases don't require assistance. If a prisoner is making mistakes and they do nothing, then I don't see that the law requires them to assist at this point. If they affirmatively mislead him in a way or threaten him or cause him to make mistakes or reassure him that, you know, this is, you know, whatever they're doing, so they take an affirmative act, that's a different story it seems to me. Correct. And in this situation, ignoring numerous requests and providing reasons for denying the requests that were not accurate affirmatively misled the plaintiff into believing that he had exhausted his remedies and there was nothing else he could do. The point that was completely missing from counsel's argument is that the error can be corrected. The failure to attach the written request can be corrected. At no point has that been addressed by DOC's argument. So if it can be corrected, it is not jurisdictional. I believe, Judge Walker, you— The second point is that it can be corrected and there is no time limit within which to correct it. There would be no grounds to reject a resubmitted grievance form as being untimely provided that the initial form was submitted within the time that was provided, which it was. It had a technical noncompliance issue. So for DOC later to reject a Level I grievance form, which they didn't even reject on timeliness grounds. First they rejected it as being repetitive of another grievance, which was inaccurate. They've never been able to explain what that grievance was. Then the Level II grievance was rejected as untimely, and that was incorrect because the original request had been submitted within the 30 calendar days. The rule, though, requires that the request be attached, correct? And then the—let's just see here. Or explained. Yeah, there it is. Yeah. Or explained, correct. Yeah, or explained. And if it isn't, then that grievance can't be accepted, correct? It has to have the request or the explanation attached to it. That is correct. And if the grievance isn't accepted— Unless a verbal request has been satisfied to resolve the issue, but please continue. Yeah, which is not here. And then—so that ends the grievance. So that anything that happens after that, it seems to me, is untimely. If that were the case, then the language allowing for a resubmission would not be there. You are allowed to resubmit. It is not— Is that language allowing for resubmission? That is 9.6E, I believe. And then what about the next provision, F, which is an alternative that says it can be rejected? It does permit DOC to reject. DOC did not, in fact, reject as untimely. They did not reject— I mean, does it make sense that there is no time limit on resubmitting? I mean, that would undermine all of the rules, the whole scheme. That's DOC's burden, Your Honor, and they've been very good at putting in time restrictions. Their failure to do that in that instance should not be held against the inmate who is making every effort to comply with these requirements. Thank you. We have your argument. We'll reserve decision. Thank you, Your Honor.